UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN-FLINT DIVISION

FILED
2003 MAY 22 A 11 44
U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

| | |
|---|---|
| DIRECTV, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE MARSHALL, BRIAN FRANKE, BOB KOCH, JOE ROSE, JIM SAULE, ANDREW SCHUPBACH, THOMAS AMY, JUSTIN P. POIRIER, JENNIFER MILLER, KHOA LUONG,<br><br>Defendants. | No.<br><br>COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES, AND FOR INJUNCTIVE RELIEF<br><br>GEORGE E. WOODS<br><br>MAGISTRATE JUDGE SCHEER |

Plaintiff DIRECTV, Inc., through its attorneys, alleges as follows:

## INTRODUCTION

1. Plaintiff DIRECTV is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than 10 million homes and businesses in the United States. DIRECTV's television programming currently includes major cable networks, studio movies and special events programming, as well as a variety of sports and other special interests programming. DIRECTV, a California company, has invested more than $1.25 billion to develop its direct broadcast satellite system.

2. DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming. DIRECTV offers its television programming to residential and business customers on a subscription and pay-per-view basis only. Each customer is required to obtain a DIRECTV Access Card and other system hardware (including a small satellite dish) and create an account with DIRECTV. Upon activation of the Access Card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled)

those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV.

3. On or about May 25, 2001, DIRECTV executed several writs of seizure with the assistance of local law enforcement, upon a mail shipping facility used by several major sources of pirate technologies including Vector Technologies, DSS-Stuff, DSSPro, DSS-Hangout, Whiteviper Technologies, Meadco, PCEase, Intertek Technologies, Shutt, Inc., and Canadian Security and Technology. During and subsequent to the raids, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts, and other records. Those records evidence defendants' purchases of illegally modified DIRECTV Access Cards and other devices ("Pirate Access Devices"). In reliance upon those records and other information, and upon information and belief, DIRECTV sets forth the allegations and this complaint.

4. Each defendant is a resident of this District. DIRECTV alleges that defendants have purchased and used Pirate Access Devices that are designed to permit viewing of DIRECTV's television programming without authorization by or payment to DIRECTV.

5. Defendants' actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. §605 and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§2510-2521. DIRECTV brings this action to restrain these illegal activities against it.

## PARTIES

6. Plaintiff DIRECTV, Inc. is a corporation duly incorporated under the laws of the State of California. DIRECTV has significant interests in maintaining and securing the integrity of its satellite transmissions of television programming, and in prohibiting the unauthorized reception and use of the same.

7.Defendant George Marshall is a resident of Columbiaville, Michigan. Upon information and belief, beginning in or about April 2001, defendant Marshall purchased two or more Pirate Access Devices from Vector Technologies. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

(a)On or about April 9, 2001, defendant Marshall purchased two Pirate Access Devices, consisting of a printed circuit board device called an "Unlooper" and a programmer specifically designed to illegally modify DIRECTV Access Cards, from Vector Technologies. The devices were shipped to defendant Marshall at his address in Columbiaville, Michigan.

8.Defendant Brian Franke is a resident of Davison, Michigan. Upon information and belief, beginning in or about April 2001, defendant Franke purchased one or more Pirate Access Devices from Canadian Security and Technology. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

(a)On or about April 17, 2001, defendant Franke purchased a Pirate Access Device, consisting of a printed circuit board device called an "Unlooper," from Canadian Security and Technology. The device was shipped to defendant Franke at his address in Davison, Michigan.

9.Defendant Bob Koch is a resident of Fenton, Michigan. Upon information and belief, beginning in or about May 2001, defendant Koch purchased one or more Pirate Access Devices from Vector Technologies. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

(a) On or about May 22, 2001, defendant Koch purchased a Pirate Access Device, consisting of a printed circuit board device called an "Unlooper," from Vector Technologies. The device was shipped to defendant Koch at his address in Fenton, Michigan.

10. Defendant Joe Rose is a resident of Fenton, Michigan. Upon information and belief, beginning in or about March 2001, defendant Rose purchased three or more Pirate Access Devices from Vector Technologies. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transactions:

(a) On or about March 5, 2001, defendant Rose purchased a Pirate Access Device, consisting of a printed circuit board device called an "Emulator," from Vector Technologies. The device was shipped to defendant Rose at his address in Fenton, Michigan;

(b) On or about March 28, 2001, defendant Rose purchased two Pirate Access Devices, consisting of a printed circuit board device called an "Unlooper" and a programmer specifically designed to illegally modify DIRECTV Access Cards, from Vector Technologies. The devices were shipped to defendant Rose at his address in Fenton, Michigan.

11. Defendant Jim Saule is a resident of Fenton, Michigan. Upon information and belief, beginning in or about May 2001, defendant Saule purchased one or more Pirate Access Devices from Vector Technologies. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

(a) On or about May 7, 2001, defendant Saule purchased a Pirate Access Device, consisting of a printed circuit board device called an "Unlooper," from

Vector Technologies. The device was shipped to defendant Saule at his address in Fenton, Michigan.

12. Defendant Andrew Schupbach is a resident of Fenton, Michigan. Upon information and belief, beginning in or about March 2001, defendant Schupbach purchased one or more Pirate Access Devices from Vector Technologies. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

    (a) On or about March 14, 2001, defendant Schupbach purchased a Pirate Access Device, consisting of a printed circuit board device called an "Unlooper," from Vector Technologies. The device was shipped to defendant Schupbach at his address in Fenton, Michigan.

13. Defendant Thomas Amy is a resident of Flushing, Michigan. Upon information and belief, beginning in or about March 2001, defendant Amy purchased two or more Pirate Access Devices from Canadian Security and Technology. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

    (a) On or about March 30, 2001, defendant Amy purchased two Pirate Access Devices, consisting of a printed circuit board device called an "Unlooper" and a printed circuit board device called an "Emulator," from Canadian Security and Technology. The devices were shipped to defendant Amy at his address in Flushing, Michigan.

14. Defendant Justin P. Poirier is a resident of Grand Blanc, Michigan. Upon information and belief, beginning in or about May 2001, defendant Poirier purchased two or more Pirate Access Devices from Canadian Security and Technology. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via

the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transactions:

(a) On or about May 18, 2001, defendant Poirier purchased a Pirate Access Device, consisting of a printed circuit board device called an "Unlooper," from Canadian Security and Technology. The device was shipped to defendant Poirier at his address in Grand Blanc, Michigan;

(b) On or about May 24, 2001, defendant Poirier purchased a Pirate Access Device, consisting of a printed circuit board device called an "Unlooper," from Canadian Security and Technology. The device was shipped to defendant Poirier at his address in Grand Blanc, Michigan.

15. Defendant Jennifer Miller is a resident of Grand Blanc, Michigan. Upon information and belief, beginning in or about April 2001, defendant Miller purchased two or more Pirate Access Devices from Vector Technologies. Defendant placed each order by using interstate or foreign wire facilities, and received her orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

(a) On or about April 6, 2001, defendant Miller purchased two Pirate Access Devices, consisting of a printed circuit board device called an "Unlooper" and a printed circuit board device called an "Emulator," from Vector Technologies. The devices were shipped to defendant Miller at her address in Grand Blanc, Michigan.

16. Defendant Khoa Luong is a resident of Grand Blanc, Michigan. Upon information and belief, beginning in or about April 2001, defendant Luong purchased two or more Pirate Access Devices from Intertek Technologies. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transaction:

(a) On or about April 10, 2001, defendant Luong purchased two Pirate Access Devices, consisting of a printed circuit board device called an "Unlooper" and a printed circuit board device called an "Emulator," from Intertek Technologies. The devices were shipped to defendant Luong at his address in Grand Blanc, Michigan.

## JURISDICTION AND VENUE

17. This action arises under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; the Electronic Communications Privacy Act ("Federal Wiretap Laws"), and 18 U.S.C. §§ 2510-2521.

18. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), 47 U.S.C. § 605(c)(3)(A) and 18 U.S.C. § 2520(a).

19. Each defendant is a resident of this District. Personal jurisdiction and venue are proper in this District pursuant to 28 U.S.C. § 1391(b).

## FIRST CLAIM
## UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS
## IN VIOLATION OF 47 U.S.C. § 605(a)

20. Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 19 as if set forth fully herein.

21. Defendants have received and/or assisted others in receiving DIRECTV's satellite transmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a).

22. Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

23. Defendants knew or should have known that receiving and assisting third persons in receiving DIRECTV's satellite transmissions of television programming

without authorization by or payment to DIRECTV was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 47 U.S.C. § 605(a).

## SECOND CLAIM

## UNAUTHORIZED INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF 18 U.S.C. § 2511(1)(a)

24.     Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 23 as if set forth fully herein.

25.     By using Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming, defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. §2511(1)(a).

26.     Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

27.     Defendants knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 18 U.S.C. § 2511(1)(a).

## THIRD CLAIM

## POSSESSION OF PIRATE ACCESS DEVICES

## IN VIOLATION OF 18 U.S.C. 2512(1)(b)

28.  Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 27 as if set forth fully herein.

29.  Defendants possessed and used Pirate Access Devices, knowing or having reason to know that the design of such devices render them primarily useful for the purpose of surreptitious interception of DIRECTV's satellite transmissions of television programming, and that such devices, or any components thereof, have been or will be sent through the mail or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2512(1)(b).

30.  Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

31.  Defendants knew or should have known that possessing Pirate Access Devices was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 18 U.S.C. § 2512(1)(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DIRECTV requests that this Court grant the following relief:

(1)  Find the defendants' conduct in importing, possessing and using Pirate Access Devices violates 47 U.S.C. § 605(a), and 18 U.S.C. §§ 2511(1)(a) and 2512(1)(b),

and further find that defendants' violations were willful, malicious, or for a tortious or illegal purpose;

(2) In accordance with 47 U.S.C. § 605(e)(3)(B)(i), and 18 U.S.C. § 2520(b)(1), enjoin and restrain defendants, and persons controlled directly and indirectly by defendants, from importing, possessing, or using Pirate Access Devices, and further order defendants to surrender all Pirate Access Devices;

(3) In the event of a default, in accordance with 18 U.S.C. § 2520(c)(2)(B) and 18 U.S.C. § 2511, an award of statutory damages of $10,000 for each violation of 18 U.S.C. § 2511(a)(2) alleged herein, and a further award of DIRECTV's reasonable attorneys' fees and costs in the amount of $850;

(4) In the event of trial, an award of either (a) statutory damages in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(II), and 18 U.S.C. § 2520(c)(2), or (b) compensatory and punitive damages in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(I), and 18 U.S.C. § 2520(c)(2), and DIRECTV's reasonable attorneys' fees and costs in accordance with 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

(5) For such additional relief as the Court deems just and equitable.

//
//
//
//
//
//
//
//
//
//
//

DATED: May 21, 2003.

Respectfully submitted,

**HONNIGMAN MILLER SCHWARTZ & COHN**

By: _____ P65176
for   Norman Ankers
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3583
(313) 465-7306
(313) 962-0176 (fax)

Of Counsel
YARMUTH WILSDON CALFO PLLC

Joshua J. Johnson
John Jamnback
PO Box 1110
Seattle, Washington 98111-1110
(206) 654-4125
(206) 654-4128 (fax)

Attorneys for Plaintiff DIRECTV, Inc.

11